UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RICHARD B. HOGUE,

Plaintiff(s),

v.

ALLIED COLLECTION SERVICE, INC., et al,

Defendant(s).

Case No. 2:16-CV-1620 JCM (VCF)

ORDER

Presently before the court is defendant Silver State Schools Credit Union's ("Silver State") motion for summary judgment. (ECF No. 43). Plaintiff Richard B. Hogue ("Hogue" or "plaintiff") filed a response (ECF No. 46), to which Silver State replied (ECF No. 57).

Plaintiff also filed a motion to supplement its response to Silver State's motion for summary judgment. (ECF No. 61). Silver State filed a response (ECF No. 62), to which plaintiff replied (ECF No. 65).

Also before the court is plaintiff's motion for summary judgment. (ECF No. 42). Silver State filed a response (ECF No. 50), to which plaintiff replied (ECF No. 57).

## I. Facts

The instant dispute involves allegations that Silver State erroneously reported plaintiff's derogatory credit information to Experian in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (the "FCRA"). Plaintiff alleges Silver State failed to investigate properly a credit dispute involving the reporting of an auto loan discharged through bankruptcy. (ECF No. 42).

Silver State furnishes information to consumer credit reporting agencies ("CRAs") like Experian Information Solution, Inc. ("Experian") (also named in the suit). (ECF No. 43).

Defendant Experian is a consumer reporting agency that assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties.[1] (ECF No. 43).

Plaintiff filed for Chapter 13 bankruptcy pursuant to 11 U.S.C. § 1301 *et seq*. on January 31, 2009. (ECF No. 43). Plaintiff completed the bankruptcy on May 30, 2014 and received a discharge from all of his debts, including Silver State's auto account. (ECF No. 43). Plaintiff asserts that Silver State's report contradicts itself. Silver State reported that the account had been discharged in the bankruptcy, that he still owed over $14,000 on the auto loan and had not made payments in years, but also that the account balance was $0. (ECF No. 42). Plaintiff contends this conflicting reporting resulted in the "re-aging" of plaintiff's debt, causing his account to report negatively for longer than the seven-year period legally permissible under the FCRA. *Id.* Further, plaintiff alleges Silver State violated its obligation under 15 U.S.C. § 1681s-2(b) to report account information accurately and violated industry standards regarding the reporting of accounts included in bankruptcy. *Id.* Included accounts should be reported as having a balance of $0 and as being current according to plaintiff.

Plaintiff disputed the Silver State account information with Experian, as required under 15 U.S.C. §§ 1681i and 1681s-2(b), but claims Silver State failed to correct the information. *Id.* Plaintiff contends that the erroneous reporting was the result of Silver State's Automated Credit Dispute Verification ("ACDV") to Experian in response to plaintiff's dispute. *Id.*

In the instant motions, defendant Silver State moves for summary judgment as to all of plaintiff's claims (ECF No. 43), while plaintiff moves for partial summary judgment on the issue of liability based on Silver State's reporting of inaccurate information on his credit report. (ECF No. 42).

. . .

. . .

---

[1] So far as it matters here, the FCRA defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, [or] credit capacity . . . which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes." 15 U.S.C. § 1681a(d)(1) (footnote omitted). The scope of this definition is not at issue.

## II. Legal Standards

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material

fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. Discussion

Congress enacted the Fair Credit Reporting Act (the "FCRA") in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "As it relates to furnishers of information to consumer reporting agencies, the FCRA sets forth two general requirements: the duty to provide accurate information, 15 U.S.C. § 1681s–2(a), and the duty to investigate the accuracy of reported information upon receiving notice of a dispute, § 1681s–2(b)." *Waldrop v. Green Tree Servicing, LLC,* No. 214CV2091JCMGWF, 2015 WL 5829879, at *3 (D. Nev. Oct. 5, 2015) (quoting *Cisneros v. Trans Union, LLC*, 293 F. Supp. 2d 1167, 1174 (D. Haw. 2003)).

The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. 15 U.S.C. § 1681n–o; *see also Nelson v. Chase Manhattan Morg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). However, § 1681s–2 limits this private right of action to claims arising under subsection (b), the duty to investigate the accuracy of reported information upon receiving notice of a dispute. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d

1147, 1154 (9th Cir. 2009). "Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies." *Id.*

To state a claim under 15 U.S.C. § 1681s-2(b), a plaintiff must allege four elements: (1) plaintiff identified an inaccuracy in his credit report; (2) plaintiff notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. § 1681s-2(b)(1)(A)–(E). *See, e.g.*, *Waldrop*, 2015 WL 5829879, at *3.

The duty imposed on furnishers of information is triggered upon notice of dispute. 15 U.S.C. § 1681s-2(b). "Liability on a furnisher is limited in that an individual consumer cannot state an FCRA claim against a furnisher unless the furnisher receives notice of the disputed information from the CRA and fails to comply with its duties." *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1120 (D. Nev. 2008). "Congress did provide a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher." *Nelson*, 282 F.3d at 1060. This "filtering mechanism" is an "opportunity for the furnisher to save itself from liability by taking the steps required in § 1681s–2(b)." *Id.*

Once a furnisher of information has received a report from a CRA that the furnisher provided inaccurate information, the furnisher must (1) conduct an investigation within thirty (30) days, (2) review all relevant information regarding the dispute, (3) report its results to the CRA, (4) report any inaccuracies to the CRA, and (5) modify, delete, or permanently block any mistakes. 15 U.S.C. § 1681s-2(b)(1)(A)–(E); *see also Gorman*, 584 F.3d at 1162–64. The "pertinent question" in analyzing the adequacy of the furnisher's investigation, is "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.* at 1157. Plaintiff bears the burden of showing that the investigation was unreasonable. *See id.* at 1163; *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).

Plaintiff alleges (1) that he identified an inaccuracy in his credit report dated April 28, 2015, regarding Silver State's reporting, (2) that he disputed the information on July 17, 2015, by

notifying Experian of the inaccurate information furnished by Silver State, (3) that Experian in turn timely notified Silver State of the dispute, and (4) that Silver State failed to conduct a reasonable investigation, re-reported inaccurate information, added more inaccurate information, and failed to send the results of its investigation to other CRAs. (ECF No. 58). Plaintiff alleges he incurred statutory damages as a result of Silver State's reckless and willful reporting and that he is entitled to attorney's fees and costs as a result of Silver State's negligent or willful FCRA violations. *Id.*

*a. Reasonableness of Silver State's investigation*

Taking the well-pleaded allegations set forth in plaintiff's amended complaint as true, the court finds that plaintiff has not sufficiently stated a claim under 15 U.S.C. § 1681s-2(b) against Silver State. Assuming plaintiff adequately notified Experian of the purported inaccuracies with Silver State's reporting, Silver State's investigation satisfied the five (5) obligations required by a furnisher under §§ 1681s-2(b)(1)(A)-(E). Plaintiff's personal dissatisfaction with the result of Silver State's investigation does not automatically render Silver State's investigatory efforts unreasonable or negligent under § 1681s-2(b).

Silver State reviewed all of the relevant information regarding the dispute forwarded to it by Experian. (ECF No. 50). Further, Silver State made all of the changes as requested by plaintiff. *Id.* Silver State then produced an automated credit dispute verification ("ACDV") that it sent to Experian on August 3, 2015. *Id.*

Plaintiff alleges Silver State failed to forward the result of the dispute to other CRAs, particularly Trans Union. *Id.* In response, Silver State argues that an ACDV is automatically forwarded to any CRA with which it has an account. *Id.* As such, a failure to update plaintiff's account is the fault of Trans Union, and not Silver State. *Id.*

Further, Silver State argues that the allegation as to Silver State's failure to notify Trans Union is late-filed and the court should treat any claims first made in a motion for summary judgment as a motion to amend the complaint. *Id.* Because the deadline to amend filings was on November 8, 2016, Silver State argues the court should disregard this allegation. *Id.* The court agrees. Raising this claim for the first time in plaintiff's motion for summary judgment is unfair

and prejudicial to Silver State and will not be considered by the court. *See In re New England Fish Co.*, 749 F.2d 1277, 1282 n.2 (9th Cir. 1984).

Silver State also adequately modified the inaccurate information previously reported. *Id.* Nonetheless, plaintiff alleges Silver State continued to furnish the delinquencies and the voluntary surrender of the collateral (the car) in plaintiff's payment history as well as the incorrect account balances in the account history section of plaintiff's consumer disclosure. *Id.*

Silver State argues that it is undisputed that plaintiff's auto account was delinquent on the months indicated by Silver State and that the car was voluntarily surrendered in March 2010. (ECF No. 43). Bankruptcy does not serve to rewrite history, but serves to prevent continued collection activities. *See Abeyta v. Bank of Am., N.A.*, No. 2:15-cv-02320-RCJ-NJK, 2016 U.S. Dist. LEXIS 43602, at *7-8 (D. Nev. Mar. 30, 2016). The indicators in plaintiff's payment history section that the Silver State auto account was once delinquent does not change the fact the account was discharged by the bankruptcy. In other words, the delinquency and voluntary surrender do not show plaintiff owes an ongoing obligation. The inclusion of this information is not materially misleading as plaintiff alleges. Accordingly, Silver State is under no obligation to remove this accurate information from its report.

Further, Silver State argues, and the court is in agreement, that it is responsible only for the information it furnishes to a CRA, like Experian. 15 U.S.C. § 1681s-2(b)(1)(A); (ECF No. 50). Once that information has been accurately furnished, Silver State has fulfilled its obligation under § 1681s-2(b)(1)(A). Silver State is not responsible, or liable, for what Experian reports. As to the delinquent account balances alleged by plaintiff, Silver State contends that it is undisputed that it reported a balance of $0 on the ACDV for the auto account sent to Experian. (ECF No. 50).

In addition, plaintiff failed to dispute the account balances in his original dispute or the subsequent dispute letter. *Id.* § 1681s-2(b) requires notification of a dispute in order to trigger a duty on the part of the furnisher to investigate. *See Peasley v. Verizon Wireless LLC*, 354 F.Supp.2d 1198, 1200 (S.D. Cal. 2005). Accordingly, Silver State was under no obligation to investigate or correct any purported errors regarding its furnishing of account balance information.

An impartial reading of the facts does not indicate Silver State's investigation in response to plaintiff's dispute was at all unreasonable or negligently conducted. Silver State met its obligations under 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E).

*b. Willfulness*

Negligence and willfulness claims are only permissible when a party is shown to have violated the FCRA. *See* 15 U.S.C. §§ 1681n(a), o(a). Under the FCRA, a willful volition occurs when a party acts in a manner where the risk of harm is so great that it is highly probable harm will follow. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007); *Reynolds v. Hartford Fin. Servs. Grp., Inc.*, 435 F.3d 1081, 1097 (9th Cir. 2006).

Because the court has found Silver State met its reporting and dispute investigation obligations under § 1681s-2(b)(1)(A) – (E), Silver State has not violated FCRA, let alone in a willful manner.

*c. Damages*

Plaintiff alleges he has suffered damages as a result of Silver State's willfulness and negligence in furnishing data to Experian. As plaintiff's willfulness and negligence claims fail, plaintiff's claims for damages originating from these claims will accordingly fail as well.

Plaintiff also alleges emotional damages resulting from Experian's reporting of Silver State's auto account. Plaintiff claim's damages for emotional distress based on Experian's reporting of Silver State's auto accounts because (1) plaintiff could not place his name alongside his wife's when purchasing their home for fear of denial, (2) the debt has been re-aged due to Silver State's furnishing of information, (3) plaintiff may be denied a security clearance due to negative credit history, and (4) exacerbation of a pervious medical conditions and stress.

Silver State contends that plaintiff presents no evidence that any third-party ever saw the disputed information found in the dispute results report. (ECF No. 57). As established in *Wantz*, the basis for liability under FCRA is whether a third-party sees a consumer report and makes a credit decision based on that report. *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833 (7th Cir. 2004). The court in *Wantz* found the purpose of the FCRA was to protect parties against negative credit decisions relating to what appears on a consumer report. *Id.* In *Wantz*, the court found the

plaintiff could not bring a claim for emotion distress based solely on the unilateral communication from a CRA to the consumer, unless a third-party also saw the consumer report and then made an adverse decision based on that report. *Id.*

Here, as in *Wantz*, plaintiff has failed to show Experian disclosed the disputed credit information to a third party. The disputed, negative information at issue here was not published in a consumer report, viewable be third parties. Further, no third parties made an adverse credit decision as to plaintiff based on this disputed information. As Silver State accurately states, "plaintiff's emotional distress stems from his misconceptions regarding his consumer disclosures, not any actual damages caused by a third party who saw incorrect information." (ECF No. 57). Accordingly, plaintiff's claim for emotional distress fails.

Experian stopped reporting on the Silver State auto account in January of 2016, seven years after the initial delinquency date. Nothing Silver State reported, accurate or not, affected the date on which Experian stopped negatively reporting Silver State's auto account. Accordingly, by the time plaintiff's wife applied for credit and purchased the family home (September 2016) and by the time plaintiff's security clearance was up for review (in 2017), Experian was no longer reporting on the Silver State auto account. Plaintiff also fails to provide any medical evidence of physical or emotional damages. Accordingly, plaintiff has not provided any ground upon which the court could award damages.

Further, plaintiff provides no evidence as to his out-of-pocket expenses, but instead offers hypothetical future damages that *may* occur. Such theoretical and potential damages are not the basis for liability under FCRA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). While plaintiff alleges numerous instances of improper conduct on the part of Silver State, plaintiff fails to demonstrate how this conduct resulted in actual and tangible loss of credit or emotional harm. Accordingly, the court will grant summary judgment in favor of Silver State as to plaintiff's damages claims.

. . .

. . .

. . .

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Silver State's motion for summary (ECF No. 43) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (ECF No. 42) be, and the same hereby is, DENIED.

DATED February 7, 2018.

James C. Mahan

UNITED STATES DISTRICT JUDGE