David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Allison R. Schmidt, Esq.
Nevada Bar No. 10743
ALLISON R. SCHMIDT ESQ. LLC
8465 W. Sahara Ave.
Suite 111-504
Las Vegas, Nevada 89117
Phone: (702) 387-7222
Fax: (702) 387-7222
Email: Allison@nevadaslawyers.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD B. HOGUE,<br><br>              Plaintiff,<br>       vs.<br><br>ALLIED COLLECTION SERVICE, INC; SELENE FINANCE, LLC; MOUNTAIN AMERICA CREDIT UNION; SILVER STATE SCHOOLS CREDIT UNION; IBEW PLUS CREDIT UNION; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC,<br>              Defendants. | CASE NO. **2:16-cv-01620-JCM-VCF**<br><br>**RESPONSE TO DEFENDANT SILVER STATE SCHOOLS CREDIT UNION'S MOTION FOR ATTORNEY'S FEES AND COUNTERMOTION UNDER 15 U.S.C. 1681N(C) FOR ATTORNEY'S FEES (FILED SEPARATELY)** |

Plaintiff Richard Hogue ("Plaintiff") responds to Defendant Silver State Schools' ("Silver State") Motion for Attorney's Fees and Countermotion for Attorney's Fees, for the reasons set forth below.[1]  This response is supported by the following Memorandum of Points and Authorities, as well as the pleadings and other filings made in this case.

## INTRODUCTION AND BACKGROUND

As briefed in Plaintiff's Motion for Summary Judgment, over twenty years ago the Ninth Circuit Court of Appeals found in *Guimond v. Trans Union Credit Information Co.* that a denial of credit is not a prerequisite to recovery of damages under the Fair Credit Reporting Act.[2]  Even so, Plaintiff's summary judgment motion included an October 16, 2016 consumer disclosure from Experian which showed a soft inquiry from DirectTV on October 10, 2015 – *after* the Experian reinvestigation but *before* Plaintiff's Silver State account apparently "aged off" in January 2016.[3]  Silver State was aware of this October 10, 2015 inquiry from DirecTV, because it elicited testimony from Plaintiff during his deposition regarding this specific inquiry.[4]  At summary judgment, Silver State's sole evidence that Plaintiff's credit information had not been sent to a third party was the declaration of Amanda Hoover, an Experian employee.[5]  However, after summary-judgment motions had been fully briefed, Plaintiff took the deposition of Ms. Hoover for the first time – and elicited testimony that she lacked personal knowledge of what a credit report sent to third parties actually contained.[6]  Plaintiff moved the Court to consider this evidence.[7]

Notwithstanding this controlling case law and evidence, the Court concluded, *inter alia*, the Plaintiff could not recover actual damages because there was no evidence that a credit report had

---

[1] ECF Dkt. 71 ("Motion").  Plaintiff files his countermotion separately.  Since the exhibits attached are relevant to Plaintiff's Countermotion, they are attached to that filing only.

[2] *See* Plaintiff's Motion for Summary Judgment, ECF Dkt. 42, at 27 & n.204 ("Plaintiff's MSJ"); *see also* 45 F.3d 1329, 1333 (9th Cir. 1995) ("Moreover, no case has held that a denial of credit is a prerequisite to recovery under the FCRA.").

[3] Plaintiff's MSJ, ECF Dkt. 43-17, at 21 (listing an October 15, 2015 inquiry from DirecTV).

[4] Silver State's Motion for Summary Judgment, ECF Dkt. 43, at Exhibit C, Excerpts of Feb. 10, 2017 Deposition of Richard Hogue, at 242:1-12 ("Hogue Depo").

[5] July 7, 2017 Declaration of Amanda Hoover, ECF Dkt. 44 ("Hoover Decl.").

[6] Plaintiff's Motion to Submit Supplemental Authority, ECF Dkt. 61 ("Plaintiff's Supplemental Motion").

[7] *See id.*

been sent to a third party.[8]  To do so, the Court relied on the now-abrogated out-of-circuit decision in *Wantz v. Experian Information Solutions, Inc.*[9]  The Ninth Circuit has twice declined to adopt the same standard as did the *Wantz* court.  In *Guimond*, the Ninth Circuit stated that "[n]o court has held that the prima facie case required that an inaccurate report was ever disseminated."[10]  Then, in *Robins v. Spokeo, Inc.*,[11] the Ninth Circuit once again declined "consider[ation of] whether a plaintiff would allege a concrete harm if he alleged only that a materially inaccurate report about him was prepared but never published."[12] Additionally, the unpublished panel decision of *Ottiano v. Credit Data Southwest, Inc.*, citing *Guimond*, concluded that a district court "erred by finding that [the plaintiff] failed to prove injury because he did not allege that defendant issued any reports after he notified defendant of the dispute."[13]

The Court also ultimately concluded that "bankruptcy does not serve to rewrite history, but serves to prevent continued collection activities."[14]  On summary judgment, Plaintiff introduced evidence that Silver State's own records showed an account balance "owing" on the account for many months after the surrender of the collateral and *even the discharge*; the account history section of Plaintiff's Silver State tradeline also reflected that information.[15]  Plaintiff placed these allegations in his subsequent dispute letter, i.e., the complaint.[16]  Plaintiff also introduced evidence that Silver State's own records showed entries for "sent checking demand letter" *after* the date of Plaintiff's

---

[8] *See* Feb. 7, 2018 Order Granting Silver State's MSJ and Denying Plaintiff's MSJ, ECF Dkt. 66, at 8 ("Order").

[9] *See* Order, at 8; 386 F.3d 829 (7th Cir. 2004).

[10] *Guimond*, 45 F.3d at 1333 & n.3.

[11] 867 F.3d 1108, 1116 (9th Cir. 2017), *cert. denied*, No. 17-806, 2018 WL 491554 (U.S. Jan. 22, 2018).

[12] *Id*. at 1116 & n.3.

[13] 54 F. App'x 640, 640 (9th Cir. 2003) (unpublished) (citing *Guimond*, 45 F.3d at 1333, and vacating District Court's award of attorney's fees and sanctions assessment).

[14] Order, at 7.

[15] Plaintiff's MSJ, Statement of Undisputed Material Facts, at ¶ 16.

[16] The Court also concluded that Plaintiff's failure-to-notify allegations under 15 U.S.C. 1681s-2(b)(1)(D) had been brought for the first time on summary judgment, and were not considered.  *See* Order, at 6-7.  These allegations were plain on the face of Plaintiff's complaint. *See, e.g.*, Complaint, ECF Dkt. 1, at § 123.

Chapter 13 bankruptcy discharge.[17]  Finally, Plaintiff introduced evidence that Silver State's reaction to receipt of the second dispute letter (i.e., the complaint) was to contact Experian and ask why Plaintiff's tradeline had been removed from reporting, as Silver State *told Experian* that it did not want the negative account to have been removed from Plaintiff's credit report.[18]  In sum, evidence in discovery clearly suggested that Silver State in fact engaged in "continued collection activities" despite the fact of Plaintiff's Chapter 13 bankruptcy.

Now, and without citing either the Ninth Circuit's controlling precedent or the facts developed in discovery, Silver State claims that Plaintiff's lawsuit was frivolous – because Plaintiff "never made a single request for credit during the relevant time in the pleadings on file in this matter which would have impacted any financial interest of the Plaintiff with respect to any alleged violation of the FCRA by SSSCU."[19]  Silver State also claims that the Court found that Plaintiff's arguments regarding liability had been rejected by the District Court.[20]  On these bases, Silver State contends that Plaintiff's complaint was filed in bad faith, warranting sanctions under 15 U.S.C. § 1681n(c).[21]

Plaintiff did not act in "in bad faith or for purposes of harassment" when he filed a complaint premising his damages on circumstances falling squarely within Ninth Circuit precedent in *Guimond* and its progeny.[22]  Indeed, had Plaintiff proven that Silver State acted willfully for purposes of Section 1681n, no actual damages would have been required at all.[23]  Neither the Court's order on

---

[17] *Compare* Order, at 7 (noting a "subsequent dispute letter," when only one pre-complaint "letter" had been sent); *and* Plaintiff's MSJ, Statement of Undisputed Material Facts, at ¶ 16 (noting submission of the complaint); *with* Complaint, at ¶¶ 30, 117 (alleging that Silver State "inaccurately reported balances in every month from June 2014 through May 2015," notwithstanding Plaintiff's bankruptcy discharge in 5/30/2014).  Plaintiff welcomes the Court's conclusion that a complaint can also function as a consumer dispute, which is in line with other decisions in this District which have permitted such allegations to go forward.  *See generally Mainor v. Experian*, No. 16-cv-183-RFB-PAL (D. Nev. 2017) (permitting leave to amend to add class allegations).

[18] Plaintiff's MSJ, Statement of Undisputed Material Facts, at ¶ 18.

[19] Motion, at 2.

[20] *Id.* at 3.

[21] *Id.* at 1.

[22] 15 U.S.C. § 1681n(c).

[23] *Id.* at § 1681n.

summary judgment in this case, nor any prior instruction from the Court during the litigation, remotely suggested that the complaint was frivolous, that Plaintiff's conduct was sanctionable, or that attorney's fees might ever be imposed. Even if Silver State had properly supported its motion for attorney's fees, which it did not, awarding any fees to Silver State under 15 U.S.C. § 1681n(c) is inappropriate.

Even if the Court found Plaintiff's lawsuit so frivolous that he lacked "a valid basis for any theory of recovery against SSSCU for violating the FCRA at the time he instituted this action,"[24] Silver State's request is not properly supported by a list of fee entries sufficient for the Court to determine whether they are reasonable, and the motion can be denied on this independent basis. And even if the Court somehow concludes that Section 1681n(c) attorney's fees are warranted, Plaintiff requests a stay of adjudication on execution of that order until after Plaintiff's pending appeal on the District Judge's summary-judgment order is issued. On February 7, 2018, the same day the Court issued its order, Plaintiff filed a notice of appeal.[25] On February 8, 2018, the Court of Appeals docketed the appeal, and ordered Plaintiff's opening brief by April 10, 2018, with Silver State's answering brief due on May 10, 2018.[26] Given the Ninth Circuit's relatively abbreviated timeline for ordering responsive briefing, Silver State will not be prejudiced by any stay of a determination of attorney's fees pending appeal.

## DISCUSSION

### A.  Silver State is not entitled to fees under 15 U.S.C. § 1681n(c).

15 U.S.C. § 1681n(c) provides,

Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

---

[24] Motion, at 2.
[25] ECF Dkt. 68.
[26] No. 18-15204, ECF Dkt. 1.

Under this statutory subsection, "[f]ees are not awarded simply because a party prevails in litigation."[27]  Instead, "[t]he statute requires a showing that a document was *filed* in bad faith."[28] A plaintiff does not engage in bad faith by *maintaining* an action after being provided with exculpatory information, where there is no showing that (1) the exculpatory evidence was not in Plaintiff's possession when the lawsuit was *filed*, and (2) there may be other bases for which the defendant can ultimately be held liable for the violation.[29]  Instead, awards under Section 1681n(c) have been upheld in unpublished cases when there was a "pattern of meritless discovery motions and the court's repeated warnings that such bad-faith filings would lead to sanctions."[30]

In light of *Guimond* and its progeny, there is simply no basis to conclude Plaintiff filed or maintained this lawsuit in bad faith rising to the level of sanctionable conduct.  Contrary to Silver State's view on the law, Plaintiff's allegations of damages were grounded in facts reasonably known at the time of filing, and thus were neither brought nor maintained in bad faith.[31]  And Silver State can find no support for its request for fees explicitly in the Court's order – which did not find that the Plaintiff's allegations were frivolous, or suggest that sanctions would be appropriate.[32]  Nor can Silver State point to any other order from the Court in this case that would lead to the same conclusion.

Instead of acknowledging the Ninth Circuit's controlling precedent, Silver State premises its bad-faith argument principally on the "damages" portion of the Court's order.  Here, the Court found

---

[27] *Edge v. Professional Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 119 (E.D.N.Y. 1999).

[28] *Rogers v. Johnson-Norman*, 514 F. Supp. 2d 50, 52 (D.D.C. 2007) (quotation omitted).

[29] *Bagumyan v. Valero Energy Corp.*, No. 07-312-ABC, 2007 WL 1500849, at *2 (C.D. Cal. Apr. 25, 2007).

[30] *Jaffe v. St. Luke's Medical Center, LP*, 195 F. App'x 659, 660 (9th Cir. 2006) (unpublished).  *See also River Oaks Homeowners Protection Committee, In. v. Edington & Associates*, 32 F. App'x 929, 931 (9th Cir. 2002) (unpublished) (denying fee award where there was no evidence "that would tend to demonstrate bad faith.").  *See also Ottanio*, 54 F. App'x at 640 (citing *Guimond*, 45 F.3d at 1333, and vacating District Court's award of attorney's fees and sanctions assessment in case brought against consumer reporting agency, and finding that the District Court "erred by finding that [the plaintiff] failed to prove injury because he did not allege that defendant issued any reports after he notified defendant of the dispute.").

[31] There is no allegation that the Plaintiff knew that his credit report did not show that Experian had apparently stopped reporting the Silver State tradeline as of January 2016.

[32] *See generally* Order.

that "Experian stopped reporting on the Silver State auto account in January of 2016."[33]  However, this conclusion alone cannot serve as the basis for a bad-faith allegation, because the precise date on which Experian stopped reporting was unknown to Plaintiff prior to filing the suit, nor could a prediction as to when the tradeline would cease reporting be reasonably derived from the reinvestigation results that Experian sent him in 2015.  This is because Silver State reported that the account had been (1) included in Plaintiff's Chapter 13 bankruptcy on May 30, 2014, but (2) continued to report an account balance through May 2015 notwithstanding the discharge, and (3) did not otherwise indicate when the account was "age off" of the tradeline.[34]  In any event, Plaintiff's concern about his security clearance would have *begun* when he received his credit report in 2015 – well before Experian took the then-unknowable decision to stop reporting on his account in January 2016.[35]  The fact that Experian may have corrected the issue prior to any determination having been made says nothing about the *impression* that the erroneous report of reinvestigation triggered.  In any event, Plaintiff clearly suffered a cognizable harm.[36]

Silver State's argument regarding whether Plaintiff's purported lack of "damages" based on whether a third party ever viewed Plaintiff's credit report are even further afield.  Even assuming that Plaintiff was in fact required to show that a third party viewed his consumer report during the period when the tradeline was reporting – which according to the Ninth Circuit's controlling precedent, he was not – Silver State's contention that "Plaintiff even failed to present a scintilla of evidence that any third-party ever saw the disputed information" is incorrect.  Silver State ignores the presence of Exhibit 16 to the Motion for Summary Judgment, which demonstrates on its face that Directv made a soft credit inquiry from between July 2015 and January 2016.[37]  Silver State also neglects to mention that it elicited testimony from Plaintiff at his deposition regarding whether a third party had accessed his credit information during this time period between July 2015 and January

---

[33] *Id.* at 9.

[34] *See* Plaintiff's MSJ, at 2.

[35] *See id.* at Statement of Undisputed Material Facts, at ¶ 24.

[36] In the Ninth Circuit, expert testimony is not required to establish a jury's award of emotional distress damages.  *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1040-41 (9th Cir. 2003).

[37] Plaintiff's MSJ, at Exhibit 16.

2016, included this testimony at Exhibit C to its own motion for summary judgment, and Plaintiff

testified that this had occurred:

> BY MR. HERNANDEZ:
> Q.      Well, I think the Silver State one is
>         before the time frame, which was March 12, 2015.
>         So I said from July 2015 so January 2016. So
>         unless I'm reading this wrong -- and you can
>         correct me -- it looks like it's only the DirecTV
>         one.
> A.      Okay.
> Q.      Do you remember that, what that inquiry
>         was about?
> A.      Well, basically, whenever you get a
>         package through DirecTV, they run your credit.[38]

In sum, Plaintiff knew what credit applications he had submitted, and he submitted them

during the limited July 2015-January 2016 period that Silver State claims qualifies as triggering

harm.  During this period, DirecTV made inquiries into the information contained in Experian's

files.  Thus, even under Silver State's flawed reasoning – which the Court of Appeals rejected in

*Guimond* and its progeny – Plaintiff did not act in bad faith by bringing the complaint.[39]

Silver State also contends that Plaintiff acted in bad faith by bringing the complaint because

the Court found no errors in Silver State's reporting.[40]   Tellingly, Silver State cites no binding

precedent establishing that any of the reporting errors outlined in Plaintiff's complaint were

categorically unrecoverable, and the Court's own order relied on a single unpublished trial court case,

*Abeyta v. Bank of Am. N.A.*, to reach its conclusion that "Bankruptcy does not serve to rewrite

history, but serves to prevent continued collection activities."[41]   Other courts in this District which

have considered the merits of an *Abeyta* challenge have concluded that it insufficient to stay

---

[38] Silver State's Motion for Summary Judgment, ECF Dkt. 43-4, at 15, Feb. 10, 2017 Deposition of Richard Hogue, at 242:1-12.

[39] Plaintiff testified that there was at least a question whether he had been placed on a mortgage application because a bankruptcy was on his credit report, and thus he had been effectively denied credit by being told he could not apply.  Motion, at 12:21.

[40] Motion, at 3-4.

[41] Order, at 7 (citing *Abeyta v. Bank of Am.*, No. 15-cv-2320-RCJ-NJK, 2016 U.S. Dist. LEXIS 43602, at *7-8 (D. Nev. Mar. 30, 2016).

discovery.[42]   Indeed, this Court held, shortly before entering decision in this matter, that "[t]o prevail on an FCRA claim, a plaintiff needs to make a direct allegation that defendant's report of past due balance constituted an indication that the balance was still outstanding."[43]   In his Complaint, Plaintiff alleged that the "account history" section of the Experian reinvestigation showed *post-discharge balances* reporting on Plaintiff's Silver State account.[44]   While the Court came to a different conclusion, the bottom line is that there were a multitude of facts entitling Plaintiff to pursue his claims in discovery.  In light of these, Silver State's request for fees seeks what Section 1681n(c) forbids: the fees it incurred "simply because a party prevails in litigation."[45]

### B. Silver State cannot recover attorney's fees under FRCP 68.

Citing to *MRO Communications, Inc. v. Am. Tel & Tel. Co.*, 197 F.3d 1276, 1280 (9th Cir. 1999), Silver State also contends that Rule 68 operates to shift costs in this case because it sent Plaintiff a Rule 68 offer of judgment, and Plaintiff obtained a less favorable result.[46]   Silver State misrepresents its self-chosen authority, which goes on to conclude that "Federal Rule 68 is inapplicable in a case in which the defendant obtains judgment."[47]   Instead, *MRO Communications* requires that "costs" must be awardable *under the relevant substantive statute or other authority*,"[48] with Rule 54(d)(2) establishing a "procedure" for submitting such claims.[49]   The "substantive

---

[42] *See, e.g.*, *Uehara v. TD Bank*, No. 17-cv-190-GMN-CWH, 2017 WL 6523483, at *2 (D. Nev. Nov. 15, 2017) (considering motion to stay discovery during pendency of motion to dismiss).

[43] *Harris v. Nissan-Infiniti LT*, No. 17-cv-191-JCM-VCF, 2018 WL 387397, at *3 (D. Nev. Jan. 11, 2018).  The Ninth Circuit does not restrict furnisher inaccuracies in the manner the *Harris* court specified.  *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) (finding information that creditor failed to include a notice of dispute could be inaccurate); *see also Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (noting that it was inaccurate to report a loan in "repossession status" and to fail to report the fact that the consumer disputed the debt).

[44] *See* Complaint, at ¶ 117.

[45] *Edge v. Professional Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 119 (E.D.N.Y. 1999).

[46] *See* Motion, at 5.

[47] 197 F.3d at 1280.

[48] Motion, at 5 (citing *MRO Communications, Inc.*, 197 F.3d at 1280).  *See also Marek v. Chesny*, 473 U.S. 1, 9 (1985) (noting that "costs" included those "properly awardable under the relevant substantive statute or other authority.").

[49] 197 F.3d at 1280-81.  Since Plaintiff did not assert any state law claims against Silver State, Nevada law is inapplicable.  *See id.* at 1281.

statute" in this case is Section 1681n(c), the substance of which the Court must evaluate in attempting to reach the conclusion that fees are awardable.  Even outside of the Ninth Circuit, courts which have interpreted Rule 68 in the context of Section 1681n(c) have concluded that "[b]y its plain language, Rule 68 only authorizes 'costs,' and 'costs' are not defined by the FCRA to include attorney's fees."[50]  Silver State brings none of these orders to the Court's attention in its motion.

Even assuming the Court rejects the Ninth Circuit's controlling precedent and the persuasive precedent interpreting Rule 68 and Section 1681n(c), an offer of judgment is only effective if it properly compensates Plaintiff at the time made.   Plaintiff alleged in his Complaint that Silver State's conduct was negligent and willful, and requested an award of actual, statutory, and punitive damages.[51]  Other courts have found that where, as here, a plaintiff had alleged that Silver State's conduct was willful, punitive damages were "uncapped" and that an offer of judgment which did not account for such a recovery was unwarranted.[52]  Silver State's offer of judgment was defective when provided, because it did not account for potential punitive damages.

Even setting the punitive damages issue aside, Silver State made its offer of judgment of $1,500 on February 21, 2017 for "all of Plaintiff's claims for relief."[53]  At the time the offer was made, Plaintiff had (1) filed the complaint, (2) exchanged discovery with Silver State, (3) prepared and responded to Rule 26-7 meet-and-confer letters, (4) discussed discovery and supplementation, (5) drafted and propounded a 30(b)(6) deposition notice, and conferred with Silver State's counsel regarding that notice.[54]  Indeed, by the time Plaintiff's time to accept the offer expired, Plaintiff had also prepared for and conducted Silver State's 30(b)(6) deposition which—as noted in Silver State's

---

[50] *Cole v. Cole*, No. 04-2073-CM, 2007 WL 1411612, at *1 (D. Kan. May 10, 2007); *Cooper v. Verifications, Inc.*, No. 1:04-CV-385-TS, 2008 WL 5332190, at *5 (N.D. Ind. Dec. 18, 2008) (quoting *Cole* and applying it to fee request brought by Plaintiff).

[51] *E.g.*, Complaint, at 34-35.

[52] *Harris v. Excel, Inc.*, No. 14-cv-1231,  2015 WL 4514559, at *2 (S.D. Ohio July 24, 2015); *Beaudry v. Telecheck Services, Inc.*, No. 07-cv-0842, 2010 WL 2901781, at *4 (MD. Tenn. July 20, 2010); *Evans v. Two Hawk Employment Services*, No. 14-cv-151-WOB-CJS, 2015 WL 403149, at *4 (E.D. Ky. Jan. 28, 2015).

[53] *See* Motion, at Exhibit A.

[54] Mar. 7, 2018 Declaration of Miles N. Clark , at ¶ 4 ("Clark Decl."), **Exhibit B**.

defective bill of costs—was alone more costly than the amount of the offer itself.[55]  Silver State's 30(b)(6) deposition took nearly seven hours.[56]  Even assuming that Plaintiff had not sought statutory and punitive damages and was awarded only $1 of actual damages, the fees and costs incurred at that point were well in excess of the offer when made.  Silver State's devaluation of the costs incurred at the time the offer was made rendered its offer of judgment defective when made.  Silver State cannot use its defective offer at this stage of the proceedings to support its fee award.

Silver State next claims that "even without the Offer of Judgment, SSSCU would be entitled to its attorney's fees in this matter," citing the unpublished trial court case of *Mayle v. Equifax Information Services, Inc.*[57]  The *Mayle* case is readily distinguishable from the circumstances in this case.  In *Mayle*, a plaintiff (1) contested she owed a debt, but (2) was in possession of confirmation from the lender that the amount of the debt was owed, and (3) provided this documentation to her attorneys prior to filing suit, which they nonetheless did.  Silver State makes no meaningful comparison between the facts of *Mayle* and those in this case, because there are none.[58]  Silver State cannot seriously claim that Plaintiff had access to Silver State's ACDV response, or Silver State's policies and procedures or internal documentation, prior to the time he filed this lawsuit.  Indeed, it was not until after the close of discovery until Silver State first provided a declaration from an Experian witness, Amanda Hoover, who claimed that the information on Plaintiff's consumer disclosure would not appear on a consumer report sent to third parties.  And even Silver State acknowledges that the issues raised in this lawsuit "required application of complex federal litigation."[59]  This is a far cry from the unambiguous, binary records of an account due and owing in *Mayle* which Plaintiff possessed at the outset of litigation, and which demonstrate that Plaintiff did not act in bad faith by bringing the complaint.  The fact that the *Mayle* case is apparently the best legal authority Silver State has to support its fee-shifting argument bespeaks the argument's lack of merit.

---

[55] *Id.*; *see also* ECF Dkt. 69, at 4.

[56] Clark Decl., at ¶ 4.

[57] Motion, at 6 (citing No. 03 CV 8746, 2006 WL 84424343 (N.D. Ill. Mar. 1, 2006)).

[58] *See id.*

[59] *Id.* at Exhibit D, Feb. 21, 2017 Declaration of David Clayson at 59 ¶ 8 ("Clayson Decl.").

**C.  Silver State's fee application should be denied.**

### 1.  The fee application is defective.[60]

Even were the Court to find that Silver State should be awarded fees, it is unable to do so based on the billing entries as submitted.[61]  To determine reasonable attorney's fees, courts in the Ninth Circuit use the "lodestar" method by multiplying the reasonable hourly rate by the number of hours reasonably expended in the litigation.[62]  Controlling Ninth Circuit precedent requires "[t]he party seeking an award of fees [to] submit evidence supporting the hours worked and the rates claimed;" the trial court "should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'"[63]  In calculating the lodestar figure, the court considers the following factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed on the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[64]

A fee application must also conform to Federal Rule of Civil Procedure 54(d)(2)(B), which requires:

> (B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:
>
>     (i) be filed no later than 14 days after the entry of judgment;
>
>     (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

---

[60] Plaintiff reserves right to challenge any aspect of this defective fee application if the same is re-submitted or after examination of Silver State's affiant pursuant to Local Rule 54-14(c).

[61] *See* Clark Decl., at ¶ 5.

[62] *Morales v. City of San Rafael,* 96 F.3d 359, 363–65 (9th Cir.1995).

[63] *E.g.*, *Van Gerwen v. Gauarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quotation omitted).

[64] *Fischer v. SJBP.D. Inc.,* 214 F.3d 1115, 1119 n.3 (9th Cir.2000) (citing *Kerr v. Screen Guild Extras, Inc.,* 526 F.2d 67, 70 (9th Cir.1975)).

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Finally, the District of Nevada imposes additional requirements for recovery of attorney's fees. In addition to incorporating the *Kerr* factors into Local Rule 54-14, this District requires:

(b) Content of Motions. Unless the court orders otherwise, a motion for attorney's fees must include the following in addition to those matters required by Fed. R. Civ. P. 54(d)(2)(B):
(1) A reasonable itemization and description of the work performed;
(2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable under LR 54-1 through 54-13;
(3) A brief summary of:
    (A) The results obtained and the amount involved;
    (B) The time and labor required;
    (C) The novelty and difficulty of the questions involved;
    (D) The skill requisite to perform the legal service properly;
    (E) The preclusion of other employment by the attorney due to acceptance of the case;
    (F) The customary fee;
    (G) Whether the fee is fixed or contingent;
    (H) The time limitations imposed by the client or the circumstances;
    (I) The experience, reputation, and ability of the attorney(s);
    (J) The undesirability of the case, if any;
    (K) The nature and length of the professional relationship with the client;
    (L) Awards in similar cases; and
    (M) Any other information the court may request.
(c) Attorney Affidavit. Each motion must be accompanied by an affidavit from the attorney responsible for the billings in the case authenticating the information contained in the motion and confirming that the bill was reviewed and edited and that the fees and costs charged are reasonable.
(d) Failure to provide the information required by subsections (b) and (c) in a motion for attorney's fees may be deemed a consent to the denial of the motion.[65]

Silver State's application for attorney's fees is not properly supported by evidence in accordance with the applicable rules. First and foremost, Silver State does not provide any description of any work performed in the case, which makes it impossible for the Court to reach a determination that the entries were reasonable – let alone whether any work was performed by licensed attorneys or paralegals.[66] While Silver State offers to submit the descriptions *in camera,*

---

[65] D. Nev. LR 54-14.
[66] *See* Motion, Exhibit C, Silver State Billing Entries ("Billing Entries").

this prevents Plaintiff from challenging the reasonableness of any of the entries themselves as required under Local Rule 54-14(e);[67] and its proffered justification from withholding this essential portion of its motion – that Plaintiff "should not be allowed to see [the entries] because the Plaintiff has filed a Notice of Appeal"[68] – is contradicted by the fact that descriptions of legal work performed are routinely required to be submitted when awarding fees during the course of litigation, such as when fees are awarded in response to a discovery motion.  Silver State cannot have it both ways by omitting information essential to determining a fee application while still requesting compensation for the same.  The Court should hold Silver State to its strategic decision, and find it has failed to satisfy a central element of the attorney's fee application.

Silver State's evidentiary proffer also fails to satisfy Nevada's local rules.  The application is supported by the Affidavit of David Clayson, which fails to sufficiently identify the qualifications for any of the individuals who billed the entries in question so the Court can evaluate it the fees requested against the qualifications of the individuals who made the entries.[69]  The affidavit also fails to comply with Local Rule 54-14(c) in that it fails to indicate that the billing entries were "reviewed and edited," or even that the affiant, David Clayson, was "responsible for the billings in the case."[70]  Indeed, because the great majority of billing entries are supplied from another law firm, Brooks Hubley, on information and belief Mr. Clayson was not affiliated during the time that law firm billed on this case, nor did Kolesar & Leatham appear as co-counsel during the time Brooks Hubley was in existence (or at best, the overlap was for a short time).  Thus, it appears impossible for Mr. Clayson to affirm the great majority of billing entries in question.[71]  In sum, even if the Court were willing to commit clear error by accepting the work at face value with zero description of the same, it would have no means to determine whether the requested rates are reasonable in connection with the actors who performed any of the tasks in question.

---

[67] D. Nev. LR 54-14(e) ("If an opposition is filed, it must set forth the specific charges that are disputed and state with reasonable particularity the basis for the opposition.").

[68] Clayson Decl., at ¶ 3.

[69] *See generally id.*

[70] *See generally id.*

[71] Clark Decl., at ¶ 5.

### 2. If the Court is inclined to grant the motion, Plaintiff requests the opportunity to examine the affiant.

Local Rule 54-14(f) requires that "[i]f either party wishes to examine the affiant, the party must specifically make that request in writing."  If the Court is inclined to grant the motion for attorney's fees, Plaintiff explicitly requests an opportunity to examine Mr. Clayson regarding the reasonableness of these fees pursuant to the Local Rules.[72]  Specifically, Plaintiff is concerned that Mr. Clayson appeared in this case late in the proceedings, is a member of a different law firm than the now defunct Brooks Hubley, who generated the majority of the billing entries in question.[73] Consequently, Mr. Clayson likely has no knowledge of the billing entries submitted by Brooks Hubley, has no knowledge of the skills and experiences of several of the entrants listed on the billing entries as Local Rule 54-14(b)(3)(I) requires, and does not affirm that any of the entries (whether by Brooks Hubley or Kolesar Leatham) were actually reviewed and edited as Local Rule 54-14(c) requires.[74]  An examination of Mr. Clayson will permit Plaintiff to procure testimony regarding Mr. Clayson's personal knowledge of these issues, as well as provide an opportunity for explanation of the content of each and every itemized billing entry which is presently omitted, so that Plaintiff can ascertain whether the entry in question was reasonable and was properly supported in Silver State's motion.[75]

### 3. Even if the Court is inclined to grant Silver State's motion for attorney's fees, it should stay of that order until after the Court of Appeals enters a decision.

If the Court finds that Silver State should be awarded fees, it should stay execution of that order until after adjudication of the appeal.  As noted above, the Ninth Circuit has set an relatively rapid briefing schedule on appeal, with Plaintiff's opening brief due in little over a month's time, and a response brief due a month thereafter.  Moreover, Silver State has itself redacted the very same descriptions of the services rendered due to the pendency of the appeal. There is no prejudice to Silver State in staying any determination on awarding fees until after the Ninth Circuit's

---

[72] D. Nev. LR 54-14(f) Clark Decl., at ¶ 5.
[73] Clark Decl., at ¶ 5.
[74] *See id.*
[75] *See id.*

adjudication of the appeal – especially as Silver State has omitted a required element of its fee application in order to gain an apparent strategic advantage on appeal.

## COUNTERMOTION FOR SANCTIONS PURSUANT TO 15 U.S.C. § 1681N(C)

Silver State's own motion for attorney's fees falls victim to the same rule it attempts to use to justify its entitlement to attorney's fees.  Specifically, Silver State violated Section 1681n(c) when it filed its motion for sanctions, because Silver State misquoted its own controlling authority in *MRO Communications, Inc.* to suggest that Rule 68 could provide a basis for awarding attorney's fees in this case, when the Ninth Circuit's controlling authority plainly states that "Federal Rule 68 is inapplicable in a case in which the defendant obtains judgment."[76]  In that respect, Silver State's request for attorney's fees "was filed in bad faith" or was "for purposes of harassment," because Silver State forced Plaintiff to respond to a legal position which it knew, or should have known, had no basis in law.

Similarly, Silver State's claim in the motion that Plaintiff "pursued the instant litigation fully knowing that he could never claim that he was harmed by SSSCU" is patently false.  Not only does Silver State continue to avoid citing the Ninth Circuit's controlling precedent in *Guimond*,[77] but also ignores the discovery and deposition testimony conducted in this case, some of which it attached to *its own summary-judgment motion briefing*.[78]

The irony of the fact that Silver State must resort to these legal and factual mischaracterizations in its attempt to prevail on its own motion for attorney's fees should not be lost on the Court.  Unfortunately, this is not the first time that Silver State has attempted to use mischaracterizations of law and fact in an attempt to defeat Plaintiff's claims.  For example, in *Travers v. Experian*,[79] Silver State sent a Rule 11 letter to Plaintiff's counsel on July 25, 2017,

---

[76] 197 F.3d at 1280.

[77] This is, of course, setting aside the fact that Silver State never cited to the Ninth Circuit's controlling authority in *Guimond* when intentionally misled the Court that the *Wantz* case controlled for purposes of assessing damages under the FCRA – an issue that will now require briefing before the Ninth Circuit.

[78] *Compare* Motion, at 2, *with* Silver State's MSJ, Exhibit C, Hogue Depo, at 243:1-12.

[79] No. 17-cv-1591-RFB-CWH (D. Nev.).

based on wild misinterpretations of the controlling law.[80]  In its proposed Rule 11 motion, Silver State suggested that counsel had violated their "obligation of candor to the tribunal," and were prohibited "from engaging in conduct involving misrepresentation or in conduct that is prejudicial to the administration of justice."[81]  Silver State went on to claim that "Plaintiff's Complaint is by definition frivolous because it deliberately omits or distorts known facts."[82]

To reach its conclusions that Plaintiff's conduct was sanctionable in its *Travers* Rule 11 letter, Silver State mischaracterized the controlling law in the exact same manner as it did in this case.   Specifically, Silver State claimed in its proposed Rule 11 motion in *Travers* that "a simple review of the relevant statutory language reveals that the claims are baseless."[83]  To attempt to substantiate these bold allegations, Silver State argued that "Bullseye reports are not consumer reports under 15 U.S.C. § 1681a(d)(1) because: 1) they are not shown to third parties; and 2) they are not used to make credit decisions."[84]  To substantiate this conclusion, Silver State relied on troubling legal and factual distortions regarding application of the definition of "consumer report" at 15 U.S.C. § 1681a(d)(1), which defines the term as:

> **(d)CONSUMER REPORT.—**
> **(1)IN GENERAL.—**The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
> **(A)** credit or insurance to be used primarily for personal, family, or household purposes;
> ***(B) employment purposes; or***
> ***(C) any other purpose authorized under section 1681b of this title.***[85]

In its Rule 11 motion in *Travers*, Silver State claimed that "Under 1681(a)(d)(1) there is no consumer report *without disclosure to a third party who makes credit decisions*."[86]  To reach its

---

[80] July 25, 2017 Rule 11 Motion, **Exhibit 1** ("Rule 11 Motion").
[81] *Id.* at 10.
[82] *Id.* at 11.
[83] *Id.* at 3.
[84] *Id.* at 12.
[85] 15 U.S.C. § 1681a(d)(1) (emphasis added).
[86] Rule 11 Motion, at 11.

conclusion that a consumer report must be made by a "third party who makes credit decisions," Silver State *deliberately omitted* subsections (B) and (C) from its citation to "consumer report." This deliberate omission is not without consequence; Section 1681a(d)(1)(C) refers to Section 1681b, which in permits transmission of a consumer report in accordance with (1) the order of a court or in response to a subpoena,[87] or (2) the written instructions of the consumer to whom it relates.[88]   None of these uses, all of which meet the definition of "consumer report" under 15 U.S.C. § 1681a(d)(1), involve the actions of credit decision-makers, and Silver State knew it. Astonishingly, Silver State made the same representation to the Court in its summary-judgment briefing in this case that it did in *Travers*.[89]   In both *Travers* and *Hogue*, Silver State used this intentional misrepresentation of the statutory definition of a "consumer report" in an attempt to achieve a victory on the merits of the claims in question.

Silver State also distorted facts available to it in *Travers* in order to further its scheme to manufacture an ethical violation against Plaintiff's counsel.  Specifically, Silver State claimed in *Travers* that a Bullseye "allows the creditor to verify the credit information it previously reported to Experian about a consumer, as that information is stored in Experian's database."[90]   However, based on Experian's own marketing materials, it is not a foregone conclusion that this is the only use of a "Bullseye."  If Silver State had done nothing more than Google "Bullseye" it would have also returned an Experian Access User Guide, which describes the functions of "Bullseye" as a product that "Provides accurate, current and complete information to acquire new business, manage customers and maximize collections."[91]   Thus, it is possible that Silver State could have acquired a Bullseye for more than simple "verification."

The same "obligation of candor" that Silver State claimed that was lacking in the *Travers* is entirely lacking in its own motion for attorney's fees in this case (or even its own motion for

---

[87] 15 U.S.C. § 1681b(a)(1).
[88] *Id.* at §1681b(a)(2).
[89] *See* Silver State's MSJ, at 9.
[90] Rule 11 Motion, at 6.
[91] Experian Access User Guide, at 10, available at https://www.experian.com/assets/access/access-user-guide.pdf (last visited Mar. 7, 2018), **Exhibit 2**; March 7, 2018 Google search results for Experian Bullseye, **Exhibit 3**.

summary judgment), which "deliberately omits or distorts known facts" regarding Plaintiff's deposition testimony and the exhibits on summary judgment, and misquotes its own cited controlling authority in an attempt to claim that Rule 68 can provide an avenue of relief in circumstances where a judgment has been entered in favor of a defendant. The Court should curb this pattern of abusive and gratuitous attempts by Silver State's counsel to blatantly mischaracterize law and fact to strong-arm Plaintiff's counsel into relinquishing valid lawsuits, by permitting Plaintiff's counsel to recover the fees incurred in drafting the response to Silver State's meritless motion. A list of fees and authorities supporting those fees is supported by the Declaration of Miles N. Clark, which is attached to this countermotion.[92]

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[92] *See* U.S. Consumer Law Attorney Fee Survey Report, 2015-16, **Exhibit 4**; Billing Entries for Response and Countermotion, **Exhibit 5**.

1

2

**CONCLUSION**

For the foregoing reasons, Silver State's motion for attorney's fees should be denied, and at minimum, the Court should stay execution of the order until after Plaintiff's pending appeal has been determined.  However, the Court should grant Plaintiff's countermotion for attorney's fees incurred in responding to the misrepresentations of law and fact contained in Silver State's attorney's fees motion.

Dated: March 7, 2018

Respectfully submitted,

*/s/ Miles N. Clark*
Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Ste. 170-109
Las Vegas, NV 89129

David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Allison R. Schmidt, Esq.
ALLISON R. SCHMIDT ESQ. LLC
8465 W. Sahara Ave.
Suite 111-504
Las Vegas, Nevada 89117

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2018, and pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **RESPONSE TO DEFENDANT SILVER STATE SCHOOLS CREDIT UNION'S MOTION FOR ATTORNEY'S FEES (FILED SEPARATELY)** was served via the U.S. District Court's electronic filing system to all individuals entitled to receive service thereon.

/s/ *Lucille Chiusano*
An employee of KNEPPER & CLARK LLC